**IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF WEST VIRGINIA**

**OLLEY STRONG,**

                **Plaintiff,**                        **Civil Action: 1:16cv140**

**MEGAN J. BRENNAN,
Postmaster General, United
States Postal Service,**

                **Defendant.**

**REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION
FOR JUDGEMENT ON THE PLEADINGS OR, ALTERNATIVELY,
FOR SUMMARY JUDGMENT**

      This matter before the Court is pursuant to the "Motion for Judgment on the Pleadings or, Alternatively, for Summary Judgment," filed on November 3, 2017, by Defendant Megan J. Brennan, Postmaster General, of the United States Postal Service. (ECF No. 59.)

**I.      Procedural History**

      On June 27, 2016, the plaintiff, Olley Strong ("Strong"), initially proceeding *pro se*, initiated this lawsuit by filing a civil complaint against Defendant Megan J. Brennan, Postmaster General of the United States Postal Service, and United States Postal Service employees, Eric Grossa, James Smith, and Mark Cottrill. (ECF No. 1). Subsequently, Strong obtained counsel. On December 15, 2016, the Court granted a joint motion substituting United States Postmaster General Megan J. Brennan as the sole Defendant in the above-styled civil action.  On February 28, 2017, by and through counsel, Strong filed an amended complaint against United States Postmaster General Megan J. Brennan, (hereinafter "Postmaster"). (ECF No. 49).  The Postmaster filed its answer on March 14, 2017. (ECF No. 51).  Following discovery, the Postmaster filed the

pending "Motion for Judgment on the Pleadings or, Alternatively, for Summary Judgment." (ECF No. 59). Strong filed a response (ECF No. 61) and the Postmaster filed a reply (ECF No. 62).

After careful consideration of the motion for judgment on the pleadings or, alternatively, for summary judgment, memoranda in support thereof and in opposition thereto, the undersigned recommends that the Postmaster's motion for summary judgment be granted for the reasons stated below.

## II.   Factual Background

On May 2, 2015, Strong was hired by the United States Postal Service as a mail processing clerk. (ECF No. 49, Page 1, ¶ 1; EEOC Appeal Decision, ECF No. 1-1 at 1). Strong resigned approximately three months later on or about August 17, 2015. (ECF No. 49. at 4, ¶ 22). In December 2015, Strong, who is African-American, filed a formal Equal Employment Opportunity ("EEO") complaint, alleging the Postmaster subjected him to racial discrimination; that complaint is not in the record. However, in the Equal Employment Opportunity Commission ("EEOC") Appeal decision, which is part of the record, the EEOC noted Strong asserted the following three claims:

1. On May 23, 2015, [Strong] became aware that his car bumper had been hit in the employee parking lot and management did not properly investigate it.

2. In August 2015, and other unspecified occasions, the Postmaster told [Strong] he was working too slowly and threatened to fire him; and

3. On or around August 19, 2015, after [Strong] resigned from his position at the [USPS], he learned that the Postmaster disclosed his criminal record to [Strong's] former co-workers.

(EEOC Appeal Decision, ECF No. 1-1 at 1-2). The stated reason on Strong's resignation form was that he found a different job. Id. at 2. See also Strong Depo, ECF No. 61-1 at 36, Line 18. However, in his formal EEO complaint, Strong "alleges that it

2

was [the Postmaster's] inaction with investigating the parking lot incident, and 'continually telling him that he did not work fast enough' that caused him to resign." (EEOC Decision, ECF No. 1-1 at 2).

Pursuant to EEOC Regulation 29 C.F.R. § 1614.107(a)(2), the Postmaster dismissed Claim 1, for Strong's untimely contact with an EEO Counselor.  Id. The Postmaster also dismissed Claims 2 and 3 for failure to state a claim pursuant to 29 C.F.R. § 1614.107(a)(1).  On appeal the EEOC affirmed the Postmaster's final decision dismissing Strong's EEO complaint.  Furthermore, the EEOC found that the events described by Strong did not subject him to harassment that was "sufficiently severe or pervasive to alter the conditions of [his] employment and consequently failed to satisfy any claim of discriminatory hostile work environment." Id.  The EEOC further concluded that Strong's "privacy related concerns" in Claim 3 are outside the EEOC's jurisdiction and fall squarely within the jurisdiction of the United States District Courts.  Id.

### III.   Strong's Amended Complaint

In his amended complaint, Strong asserts that shortly after being employed by the Postmaster, his supervisor, Erica Grossa, (hereinafter "Grossa") started harassing him, eventually causing his employment conditions to become unbearable. Amend. Compl., ECF No. 49, 1 at ¶ 3.  Strong asserts that Grossa treated him differently from his non-African American co-workers. Id. at 1,2, ¶ 4.  Strong alleges, that within a few weeks of being hired, his car was damaged in the employee parking lot and after several weeks of no investigation into the matter, he was told that there was no surveillance footage despite the presence of security cameras. Compl., ECF No. 49, at 2, ¶¶ 6, 7.  Strong further alleges that Grossa verbally harassed him and threatened to fire him for working too slowly, causing him to feel "unwelcome and different" from his

co-workers who were not African-American. Id. at.2, ¶ 9.  Strong stated that Grossa did

fire him for a moment and stated that he had been wanting to fire Strong for awhile for

not working fast enough. Id. at 3 ¶ 16.  However, within minutes, Grossa rehired Strong

and allegedly told him to "forget about the damage to his car and the activities of the

previous several months, which [Strong] believed were harassing and racially

motivated." Id. at 3 ¶ 20.  Strong returned to work. Id. at 3 ¶ 21.

Strong explained that he resigned on August 17, 2015, because of the harassing

conduct of the Postmaster and its agents and employees, whose actions he believed

were racially motivated and created a "hostile, intimidating, and abusive work

environment." Id, at 4 ¶ 23.  Strong further alleges that after he resigned, Grossa

wrongfully disclosed to Postal Service employees, his criminal history, which was a part

of his personnel file.  Id. at 4 ¶ 26,27.  Strong stated that after Grossa wrongfully

disclosed his criminal history, he became embarrassed and began suffering financial

hardship, including falling behind on child support payments, car payments, and car

insurance, and the information in the community impaired his ability to work in sales at

the car dealership and damaged his reputation.  Id. at 5 ¶ 33.[1]  In sum, Strong claims

that he has been placed in a worse financial position due to the actions of Defendant.

Id. at 5 ¶ 36.

In his amended complaint, Strong alleges the following three claims:

    1.  The Postmaster breached the Privacy Act,

    2.  The Postmaster constructively discharged Strong and,

---

[1] Plaintiff explained that he had not disclosed his prior conviction on his Postal Service employment application because he believed that it requested information a bout convictions during the past seven (7) years. Compl. ECF No. 49 at 4 ¶ 29.

3.  The Postmaster caused Strong to suffer from intentional infliction of emotional distress.

## IV.   Contention of the Parties

The Postmaster contends that its pending motion for judgment on the pleadings or alternatively, for summary judgment, should be granted and argues the following:

1.  Strong's constructive discharge claim is administratively unexhausted and factually unsubstantiated;

2.  Title VII preempts and precludes Strong's emotional distress tort claim. Moreover, Strong's tort claim is administratively unexhausted and factually unsubstantiated; and.

3.  Strong cannot establish a cognizable Privacy Act claim.

In his response, Strong reiterates his position concerning the three claims asserted in his complaint and emphasizes that summary judgment is inappropriate as to his Privacy Act claim because he has alleged economic losses that are not based on mental or emotional distress.   He further argues that the same actions that constituted a breach of the Privacy Act also constitute the intentional infliction of emotional distress, emphasizing that the Postmaster's conduct was extreme and outrageous.  Lastly, Strong emphasizes that the Postmaster harassed and targeted Strong, and treated him differently from other employees on the basis of his race.

The Postmaster reiterates its position in its reply.

## V.   Applicable Law

A. Motion for Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed-but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  When considering a motion for judgment on the pleadings, courts must consider as true, the factual allegations in the pleadings and

draw permissible inferences from those facts in favor of the nonmoving party.  Burbach
Broad. Co. of Del. V. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002).  A
motion for judgment on the pleadings must be converted to a motion for summary
judgment if "matters outside the pleadings are presented to and not excluded by the
court." Med-Trans Corp. v. Benton, 581 F. Supp.2d 721, 728 (E.D.N.C 2008) quoting
Fed. R Civ. P. (12d). Because Strong's answer had been filed, the pleadings were
closed at the time of the motion. However, Strong accompanied his response (ECF No.
61) with a copy of his deposition, which the undersigned reviewed and considered.
Thus, the undersigned construes the motion as one for summary judgment.

   B.  Summary Judgment

      "One of the principal purposes of the summary judgment rule is to isolate and
dispose of factually unsupported claims or defenses."  Celotex Corp. v. Catrett, 477
U.S. 317, 323–24 (1986).  As such, summary judgment is appropriate when "there is no
genuine dispute as to any material fact and the movant is entitled to a judgment as a
matter of law."  Fed.R.Civ.P. 56(c).  The party asserting that there is no genuine dispute
to a fact may support the assertion by citing material in the record including
"depositions, documents, electronically stored information, affidavits or declarations,
stipulations, . . . admissions, interrogatory answers or other materials." Id.  When
considering the evidence at the summary judgment stage, the court is not to "weigh the
evidence and determine the truth of the matter but to determine whether there is a
genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
Additionally, the court must view the record and draw any reasonable inference from the
underlying facts in the light most favorable to the nonmoving party.  Justice v.
Speedway Superamerica, LLC, CIV.A.2:09CV00186, 2010 WL 55468, at *1 (S.D.W. Va.

6

Jan. 4, 2010) citing <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 587–88 (1986).

The party seeking summary judgment bears the initial burden of showing the nonexistence of genuine issues of fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the party seeking summary judgment makes the necessary showing, the burden then shifts to the nonmoving party to come forward with facts sufficient to show that there is a genuine triable issue of fact.  <u>Anderson</u>, 477 U.S. at 249.   An entry of summary judgment by the Court will not be prevented by the "mere existence of a scintilla of evidence" in favor of  the non-moving party; rather, summary judgment should be granted only in those cases "where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." <u>Stevens v. Howard D. Johnsons Co</u>., 181 F.2d 390 (4th Cir. 1950).

## VI.   <u>Discussion</u>

A. <u>Privacy Act</u>

In his first cause of action Strong asserts that the Postmaster violated the Privacy Act by disclosing his criminal history to his former coworkers.  Conversely, the Postmaster contends Strong does not have a viable Privacy Act claim, arguing Strong has failed to show he has suffered actual damages as a result the alleged disclosure.

The Privacy Act authorizes civil remedies to plaintiffs that file suit against federal agencies and consequently eliminates the possibility of suit under the Act against any federal employee in his or her individual capacity. 5. U.S.C. §552(a)(g)(1).  Moreover, the Privacy Act prohibits federal agencies from disclosing any record "which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written

consent of the individual. 5 U.S.C. § 552(a).  As such, the Privacy Act "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records ." Cloonan v. Holder, 768 F.Supp.2d 154, 161 (D.D.C.2011).  To prevail on a Privacy Act claim for unlawful disclosure, the plaintiff must establish by a preponderance of the evidence the following elements:

1. The information allegedly disclosed is covered by the Act as a record contained in a system of records:

2. The agency disclosed the information;

3. The disclosure was without plaintiff's consent and did not fit within one of the enumerated exceptions to the anti-disclosure provision;

4. The disclosure was willful or intentional; and

5. That the disclosure had an adverse effect on the plaintiff.

Fattahi v. Bureau of Alcohol, Tobacco & Firearms, 186 F.Supp.2d 656 (2002) (citation omitted). Additionally, the plaintiff must have suffered actual damages as a result of the disclosure.  See Doe v. Chao, 540 U.S. 614 (2004) (holding that claimant was not entitled to a damages award, after failing to show that he had suffered actual damages as result of the agency's violation.)

The Postmaster has two primary contentions concerning Strong's Privacy Act claim.  First, it contends that Strong cannot maintain a cognizable Privacy Act claim against the Postmaster individually, as the proper Defendant is the United States Postal Service.  However, Strong filed suit against Defendant Megan J. Brennan in her official capacity as Postmaster General. Filing suit against a federal government employee in her official capacity is generally construed as a lawsuit against the United States itself. Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Thus, because Strong named

8

Defendant Megan J. Brennan in her official capacity he has correctly initiated suit against the United States Postal Service.

Next, the Postmaster asserts that Strong has failed to establish that the allegedly unauthorized disclosure of his criminal history caused him to experience an obvious economic loss or any discernible adverse effect. The Court agrees.  Pursuant to 5 U.S.C. § 552a(g)(4)(A), persons entitled to recovery under the Privacy Act is limited to persons that have sustained "actual damages."  See Doe 540 U.S. 614, 620 (2004) (concluding recovery under the Privacy Act is limited to victims who have suffered adverse effects caused by intentional or willful agency action, and have sustained actual damages).

In his amended complaint, Strong alleges that he has suffered "actual financial losses" as a result of the wrongful disclosure of his criminal history by the Postmaster and the wrongful disclosure has made it harder for him to earn a living in his subsequent sales positions.  Moreover, in his response to the Postmaster's motion, Strong asserts that he has alleged small but significant economic losses as a result of the wrongful disclosure of his records, and that he "testified extensively on his claimed damages during his deposition." (ECF No 61 at 7).  The undersigned finds otherwise.  Strong failed to cite exactly where in the deposition he was referring to.   In response to the question of how the alleged disclosure of his criminal record impacted him, Strong stated the following:

> Well maybe I should say this, because, I mean, leading up to now or moving forward in the future, I don't know if it will impact me later or not. You , is it possible that I could run into somebody later today, tomorrow, five, then, fifteen years from now and say, 'Oh I remember you.  You're the guy that had that record. The postal guy was talking about you.' Sure, it hasn't happened today, bit is it possible?  Sure, it is. . . . So after finding out about this, did it pop in my head, when I seen *sic* that postman walking up the street, heading to my home, I wonder, you know, 'I wonder if he's

the one who heard that story?' I wonder if [he] knows I've been in prison? Did that pop in my head? Of course.

ECF No. 61-1, Page 48, Lines17-24, Page 49, Lines 1, 5-10.  In response to the question regarding the expenses he incurred that he believes are directly related to the Postmaster's alleged disclosure of his criminal history *or* anything else that stemm[ed] from the Postal Service," Strong explained that his car insurance lapsed and he defaulted on his car loan payment. Yet Strong failed to show how the alleged wrongful disclosure caused his alleged financial difficulties.  In short, Strong did not provide sufficient evidence to substantiate his allegations of financial loss.  Therefore, the undersigned concludes that Strong did not suffer "actual damages" as a result of the alleged wrongful disclosure of his criminal history.

Accordingly, the undersigned finds that the Postmaster is entitled to judgment as a matter of law pursuant to Strong's Privacy Act claim and thus, recommends that the Postmaster's motion for judgment on the pleadings or alternatively, for summary judgment with respect to Strong's first cause of action be GRANTED.

B. Exhaustion of Administrative Remedies

In his second cause of action, Strong asserts that he was constructively discharged.  However, the Postmaster contends that Strong did not administratively exhaust his remedies for his constructive discharge claim.

It is well established that prior to filing a Title VII lawsuit, a plaintiff must first exhaust any available administrative remedies Lewis v. City of Chicago, Ill., 560 U.S. 205, 210, (2010). See  also 42 U.S.C. § 2000e-5(e)(1).  A plaintiff's failure to exhaust available administrative remedies will deprive federal courts of subject matter

jurisdiction over the Title VII claim.  <u>Jones v. Calvert Grp., Ltd.</u>, 551 F.3d 297, 300 (4th Cir. 2009).

Generally, an exhaustion of remedies concerning a Title VII claim involves filing an administrative charge with the EEOC.  The scope of future litigation is framed by this EEOC charge.  <u>Chacko v. Patuxent Institution</u>, 429 F.3d 505 (4th Cir. 2005).  "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII law suit.'"  <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 963 (4th Cir. 1996).  <u>See</u> <u>also</u>, <u>Smith v. First Union Nat'l Bank</u>, 202 F.3d 234, 247 (4th Cir. 2000) (stating [a] plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit.").  Stated differently, if "the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred."  <u>Dennis v. County of Fairfax</u>, 55 F.3d 151, 156 (4th Cir. 1995).  Thus, to exhaust administrative remedies, "the charge must contain facts concerning the discriminatory . . .  actions underlying each claim, [because] each discrete incident of alleged discrimination . . . constitutes its own unlawful employment practice for which administrative remedies must be exhausted."  <u>Manning v. Blue Cross and Blue Shield of Kansas City</u>, 522 Fed.Appx. 438 (10th Cir. 2013), quoting, <u>Jones v. UPS Inc.</u>, 502 F.3d 1176, 1186 (10th Cir. 2007) (internal quotation marks omitted).  However, because attorneys do not typically complete the administrative charges, courts construe them liberally.  <u>Chacko</u>, 429 F.3d at 509.

In this case, Strong's constructive discharge claim may be considered by the court only if the allegations in his EEOC charge are reasonably related to the allegations

in his federal complaint.  The court finds the allegations are the same.  In its appeal

decision, the EEOC noted that Strong filed a formal complaint alleging the Postmaster

subjected him to racial discrimination when (1) the Postmaster failed to properly

investigate how Strong's car sustained damaged in the employee parking lot, (2) on a

number of occasions, the Postmaster told Strong he was working too slowly and

threatened to fire him; and (3) after Strong resigned, the Postmaster disclosed Strong's

criminal record to his former coworkers.  The EEOC further noted that while the stated

reason on Strong's resignation form was that he found another job, in his EEO

complaint, Strong asserted "it was [the Postmaster's] inaction investigating the parking

lot incident, and 'continually telling [Strong] that he did not work fast enough' that

caused him to resign.  In other words, in his EEO complaint, Strong asserted that he

tendered his resignation as a result of specific alleged discriminatory acts by the

Postmaster.  Strong asserts the same allegations in his federal complaint.  While he did

not use the precise words "constructive discharge," in his EEO complaint the

undersigned is mindful that EEO *pro se* complaints are to be liberally construed, and

finds, in view of the allegations, that Strong's claim for constructive discharge was

imbedded within his EEO complaint. Consequently, the undersigned finds that Strong

exhausted his administrative remedies and his constructive discharge claim may be

considered by the court. Therefore, the court will address the merits of Strong's

constructive discharge claim.

C. Constructive Discharge

Depending on the particular facts of a case, a resignation itself may constitute a

discriminatory act and constructive discharge.  More specifically, if an employer

discriminates against an employee and purposely makes the employee's job conditions

so intolerable that a reasonable person would feel forced to resign, then the resignation is a constructive discharge." Young v. Nation Center for Health Services Research, 828 F.2d 235, 237 (4th Cir. 1987).

In order to withstand a motion for summary judgment, Strong must present sufficient evidence to show that the Postmaster "deliberately made [his] working conditions intolerable in an effort to induce [him] to quit." Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 272 (4th Cir.2001).    Strong must therefore show (1) that the Postmaster's actions were deliberate and (2) that the working environment was intolerable. Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985). Deliberateness exists if the actions the employee complains of "were intended by the employer as an effort to force the employee to quit." Id. quoting EEOC v. Federal Reserve Bank of Richmond, 698 F.2d 633,672 (4thCir. 1983), rev'd on other grounds, 467 U.S. 867 (1984). Intolerability of working conditions, is assessed by the objective standard of whether a reasonable person in the same or similar position would have felt compelled to resign.  Id.

In this case, Strong alleges he resigned because the Postmaster failed to investigate the damage to his car, prevented him from taking breaks and having lunch with the only other African-American employee at the Postal Service, stared at him with disapproval, repeatedly harassed him verbally by stating he was working too slow, threatened to fire him and did in fact, on one occasion, fire him.  While Strong may have provided sufficient facts to show the Postmaster acted deliberately, after considering the evidence in the light most favorable to Strong, he has failed to  establish that his work environment was objectively intolerable.

"The fact that problems and tensions are encountered on the job are not enough to establish constructive discharge." Bristow 770 F.2d  at 1251.  At most, Strong demonstrated he experienced problems on the job, which may have been greater than other postal employees, but every job has its frustrations, and challenges. "[A] feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006) (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 378 (4th Cir.2004) (internal quotation marks and alterations omitted). Additionally, "difficult or unpleasant working conditions" do not qualify as intolerable conditions.  Id.  (quoting Carter v. Ball, 33 F.3d 450, 459 (4th Cir.1994)), nor are employees "guaranteed a working environment free of stress," Id.  quoting Honor, 383 F.3d at 187 n. 2 (internal quotation marks omitted).  Because Strong has failed to establish that the work environment at the Postmaster was objectively unreasonably, he has failed to provide sufficient evidence to withstand a motion of summary judgment.

Accordingly, the Court finds that the Postmaster is entitled to judgment as a matter of law pursuant to Strong's constructive discharge claim and thus, recommends that the Postmaster's motion for judgment on the pleadings or alternatively, for summary judgment with respect to Strong's second cause of action be GRANTED.

D. Intention Infliction of Emotional Distress

The Postmaster contends that Strong's intentional infliction of emotional distress tort claim (hereinafter  "IIED") is not viable, arguing Title VII preempts and precludes such a claim, but even if the claim was not precluded, it is administratively unexhausted

and factually unsubstantiated.[2]  However, Strong indicates that his IIED claim stems from "the same actions of Defendant that constitute a breach of the Privacy Act." Strong's IIED claim must fail.

As previously discussed, if an agency fails to comply with the requirements of the Privacy Act, "'in such a way as to have an adverse effect on an individual,'" the United States is liable for "actual damages" if the violations are found to be "intentional or willful".  F.A.A. v. Cooper, 566 U.S. 284, 287 (2012).  See discussion *supra* Part I.A. The term "actual damages," as used in the Privacy Act, does not include damages for mental or emotional distress.  Id.  Accordingly, the Court finds that the Postmaster is entitled to judgment as a matter of law pursuant to Strong's IIED claim and thus, recommends that the Postmaster's motion for judgment on the pleadings or, alternatively, for summary judgment with respect to Strong's third cause of action be GRANTED.

## VII.   Conclusion

For the foregoing reasons, the undersigned **RECOMMENDS** that the Postmaster's Motion for Judgment on the Pleadings or, Alternatively, for Summary Judgment (ECF No. 59) be **GRANTED**.  The undersigned further **RECOMMENDS** that Strong's complaint be **DISMISSED**.

Any party within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the

---

[2] The Postmaster accurately posits that Title VI preempts an IIED tort claim.  See Knox v. Wheeling-Pittsburgh Steel Corp., 899 F. Supp. 1529, 1535 (4th Cir. 1995) (concluding that Title VII preempts tort-based actions for discriminatory treatment in the workplace).

Honorable Irene M. Keeley, United States District Judge.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation.  28 U.S.C. §636(b)(1).  United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to forward a copy of the this Report and Recommendation to counsel of record.

Respectfully submitted this 5th day of January 2018.


MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE