IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


OLLEY STRONG,

                    Plaintiff,

v.                              //   CIVIL ACTION NO. 1:16CV140
                                     (Judge Keeley)

MEGAN J. BRENNAN,
Postmaster General,

                    Defendant.


## MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]

Pending before the Court is a motion for judgment on the pleadings or, alternatively, for summary judgment filed by the defendant, Megan J. Brennan, Postmaster General ("Postmaster General") (Dkt. No. 59). Also pending is the report and recommendation ("R&R") of the Honorable Michael J. Aloi, United States Magistrate Judge, recommending that the Court grant the Postmaster General's motion for summary judgment (Dkt. No. 77). For the reasons that follow, the Court **ADOPTS** the R&R and **DISMISSES** the case **WITH PREJUDICE**.

## I. BACKGROUND

### A.   Factual Background

On May 2, 2015, the plaintiff, Olley Strong ("Strong"), an African American, was hired by the United States Postal Service ("USPS") as a Mail Processing Clerk at the agency's Eastpointe

facility in Clarksburg, West Virginia (Dkt. No. 60-1 at 11-12; 15).

On August 17, 2015, approximately three months after he began

working at the facility, Strong tendered his resignation to USPS.

Id. at 38-40; Dkt. No. 1-1 at 2. The reason stated on Strong's

resignation form was that he had found another job (Dkt. No. 60-1

at 38, 124). In this lawsuit, Strong contends that real reason for

his resignation was "the harassing conduct of the defendant and its

agents and employees, whose actions were racially motivated" (Dkt.

No. 49 at 4). See also Part III.B, infra. It is nonetheless

undisputed that, approximately one week after resigning from USPS,

Strong began working as a salesman at a car dealership located in

Morgantown, West Virginia (Dkt. No. 61 at 39-40; 53).

On August 17, 2015, the same day Strong resigned from USPS,

the agency's Human Resources Office completed his then-pending

background check, which revealed that Strong had a criminal record

that he had previously failed to disclose.[1] Because Strong had

already resigned, USPS took no formal action. According to the

amended complaint, however, a former co-worker later informed

---

[1] The USPS requires prospective employees to disclose all
criminal convictions (Dkt. No. 60-1 at 14-15; 103). Strong
testified during his deposition that he did not intentionally
withhold his criminal record during the application process because
he erroneously thought his conviction was too old to matter (Dkt.
No. 61-1 at 20).

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

Strong that, shortly after his resignation, Clarksburg Postmaster
Eric Grossa ("PM Grossa") told several USPS employees that Strong
had been fired for having a criminal record. Strong alleges that
the co-worker also informed him that PM Grossa had shared Strong's
private personnel file, including records obtained during his
criminal background check, with other employees on multiple
occasions. PM Grossa has denied these allegations (Dkt. No. 1-1 at
2).

**B.    Procedural Background**

Based on alleged discriminatory conduct by PM Grossa, and
concerned for his reputation, Strong filed an Equal Employment
Opportunity ("EEO") complaint in December 2015, in which he alleged
that USPS had discriminated against him on the basis of his race
(Dkt. No. 1-1 at 1). Specifically, Strong's complaint alleged that:

> (1) On May 23, 2015, he became aware that his car bumper
> had been hit in the employee parking lot and management
> did not properly investigate it;

> (2) In August 2015, and on other unspecified occasions,
> PM Grossa told him that he was working too slowly and
> threatened to fire him; and

> (3) On or around August 19, 2015, after [Strong] had
> resigned from his position at the Agency, he learned that
> PM Grossa had allegedly disclosed his record to his
> former coworkers.

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

Id. at 1-2. On January 5, 2016, USPS dismissed Strong's claim that management had not properly investigated the damage to his car as untimely, because he had failed to initiate contact with an EEOC Counselor within forty-five (45) days, as required by EEOC regulations. Id. at 2. It further dismissed Strong's remaining claims for failure to state cognizable claims. Id. at 3.

On appeal, the EEOC affirmed the dismissal of Strong's complaint. Id. In a decision issued on April 19, 2016, the EEOC found that Strong's first claim had been properly dismissed for untimely contact with an EEO Counselor. As to Strong's second and third claims, the EEOC agreed that he had failed to state a claim, because he had not shown that he suffered harm or loss with respect to a term, condition or privilege of employment for which there is a remedy. Id. It found that, to the extent Strong was claiming a hostile work environment, the events described, even if proven to be true, "would not indicate that [he] had been subjected to harassment that was sufficiently severe or pervasive to alter the conditions of [his] employment." Id. Specifically, the EEOC found that Strong's allegation that PM Grossa threatened to fire him and told him that he was working too slowly represented only one instance of alleged harassment. Id.

4

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

Finally, as to Strong's third claim, the EEOC observed that the alleged discriminatory act, i.e., PM Grossa's disclosure of his criminal record, purportedly "occurred after [Strong] left the Agency and found employment elsewhere," and, therefore, could not have impacted the terms and conditions of Strong's former employment with USPS.[2] It further noted that the privacy-related concerns raised in Strong's third claim implicate the federal Privacy Act, 5 U.S.C. § 552(g)(1), which provides an exclusive statutory framework governing the disclosure of identifiable information contained in federal systems of record. Accordingly, because jurisdiction over alleged violations of the Privacy Act rests exclusively with the federal courts, the EEOC concluded that it lacked jurisdiction to consider the claim.

On June 27, 2016, Strong, filed a pro se complaint in this Court against the Postmaster General and USPS employees Eric Grossa, James Smith, and Mark Cottrill (Dkt. No. 1). Pursuant to 28 U.S.C. § 636 and LR PL P 2, the Court referred the case to Magistrate Judge Aloi for initial screening and a report and recommendation (Dkt. No. 4). On December 15, 2016, the Postmaster

---

[2] On appeal, Strong alleged for the first time that "PM not only told his former coworkers about his criminal record, but handed them [his] personnel documentation as 'proof' that [he] 'did time.'" (Dkt. No. 1-1 at 3).

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

General was substituted as the sole defendant in the case (Dkt. No. 42).

On February 28, 2017, by counsel, Strong filed an amended complaint (Dkt. No. 49),[3] asserting claims for (1) violations of the Privacy Act of 1974, 5 U.S.C. § 522(a) ("Privacy Act" or "the Act"), (2) constructive discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-1 et seq. ("Title VII"), and (3) intentional infliction of emotional distress ("IIED"). Id. at 6-9. Following discovery, the Postmaster General moved for judgment on the pleadings or, alternatively, for summary judgment (Dkt. No. 59).

Now pending is Magistrate Judge Aloi's R&R recommending that the Court grant summary judgment on all counts (Dkt. No. 77). Strong objected to this recommendation (Dkt. No. 80), contending that disputes of material fact preclude summary judgment as to his Privacy Act and constructive discharge claims. Id. at 1-2. Strong also objected to the recommendation that his IIED claim is subsumed within the Privacy Act. Id. at 2.

---

[3] On December 13, 2016, attorney Michael A. Jacks filed a notice of appearance on behalf of Strong (Dkt. No. 40).

## MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]

### II. STANDARDS OF REVIEW

**A.    Review of the R&R**

"The Court will review <u>de novo</u> any portions of the magistrate judge's Report and Recommendation to which a specific objection is made . . . and the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the [parties do] not object." <u>Dellacirprete v. Gutierrez</u>, 479 F. Supp. 2d 600, 603-04 (N.D. W. Va. 2007) (citing <u>Camby v. Davis</u>, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold portions of a R&R to which no objection has been made unless they are "clearly erroneous." <u>See</u> <u>Diamond v. Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005).

**B.    Motion for Summary Judgment**

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. <u>Walker v. Mod-U-Kraf</u>

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

Homes, L.L.C., 775 F.3d 202, 207 (4th Cir. 2014). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

### III. DISCUSSION

**A.   Privacy Act**

In Count One of the amended complaint, Strong contends that the defendant violated the Privacy Act by willfully and intentionally disclosing his personnel records, including the results of his criminal background check, to USPS employees (Dkt.

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

No. 49 at 6-7). Strong seeks monetary damages under the Act,
alleging that damage to his reputation by the defendant's "wrongful
dissemination of his private records" has caused him to "suffer
actual financial losses and made it harder for him to earn a living
in his subsequent sales positions" (Dkt. Nos. 49 at 5; 61 at 5).

The Privacy Act prohibits federal agencies from disclosing
their records to any person or to another agency. 5 U.S.C.
§ 552a(b). Section (g)(1)(D) describes an agency's failure to
maintain an adequate record on an individual and provides a private
cause of action when that person has suffered "an adverse effect"
as the result of a disclosure in violation of the Act. 5 U.S.C.
§ 552a(g)(1)(D); see also Fattahi v. Bureau of Alcohol, Tobacco &
Firearms, 186 F. Supp. 2d 656, 659 (E.D. Va. 2002), aff'd, 328 F.3d
176 (4th Cir. 2003). Thus, to set forth a viable claim under the
Privacy Act, the plaintiff must establish, by a preponderance of
the evidence, the following five elements regarding the allegedly
unauthorized disclosure:

1. That the information allegedly disclosed is covered
   by the Act as a "record" contained in a "system of
   records";

2. That the agency disclosed the information;

3. That the disclosure was without plaintiff's consent
   and did not fit within one of the enumerated
   exceptions to the anti-disclosure provision;

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

> 4.    That the disclosure was willful or intentional; and
>
> 5.    That the disclosure had an adverse effect on the
>       plaintiff.

Id. (citing Gowan v. U.S. Dep't of Air Force, 148 F.3d 1182, 1193

(10th Cir. 1998); Quinn v. Stone, 978 F.2d 126, 131 (3d Cir.

1992)). The parties' dispute on summary judgment focused on the

fifth element, "adverse effect on the plaintiff" (Dkt. Nos. 60 at

22-24; 61 at 7).

As the Supreme Court observed in Doe v. Chao, 540 U.S. 614,

619 (2004), "breaches of the [Privacy Act] with adverse

consequences are addressed by specific terms governing relief." The

relevant provision of the Act provides that

> (4)  [i]n any suit brought under the provisions of
> subsection (g)(1)(C) or (D) of this section in which the
> court determines that the agency acted in a manner which
> was intentional or willful, **the United States shall be
> liable to the individual in an amount equal to the sum
> of**—
>
>> (A) **actual damages sustained by the individual as a
>> result of the refusal or failure, but in no case
>> shall a person entitled to recovery receive less
>> than the sum of $1,000;** and
>>
>> (B) the costs of the action together with
>> reasonable attorney fees as determined by the
>> court.

§ 552a(g)(4) (emphasis added).

10

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

At issue in <u>Chao</u> was whether a Privacy Act plaintiff must prove actual damages to qualify for the minimum statutory award of $1,000. 540 U.S. at 616. There, the plaintiff brought suit under the Privacy Act against the Department of Labor (DOL) for improperly disclosing his Social Security number. <u>Id.</u> at 617. The Fourth Circuit held that the DOL was entitled to summary judgment, concluding that the plaintiff had failed to raise a triable issue of fact about actual damages because he had submitted no corroboration for his emotional distress claim. <u>Id.</u> The Supreme Court affirmed, reasoning that "a straightforward textual analysis" of the Privacy Act required a plaintiff to prove actual damages from an intentional or willful violation of the Act to qualify for the award. <u>Id.</u> at 620.

Here, as correctly concluded by Magistrate Judge Aloi in the R&R, Strong's claim under the Privacy Act fails for lack of evidentiary support (Dkt. No. 77 at 10). First, as argued by the Postmaster General, Strong's allegations regarding the purported disclosure of his criminal record relate only to how the disclosure might impact him in the future and are thus speculative, at best. When asked how the alleged disclosure has impacted him, Strong replied that "it would be a form of embarrassment," and explained as follows:

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

>        Well maybe I should say this, because, I mean,
> leading up to now or moving forward in the future, **I
> don't know if it will impact me later or not.** You know,
> is it possible that I run into somebody later today,
> tomorrow, 5, 10, 15 years from now and say, "Oh I
> remember you. You're the guy that had that record. The
> postal guy was talking about you." **Sure, it hasn't
> happened today, but is it possible? Sure it is.**
>
> ...
>
>        So, after finding out about this, did it pop in my
> head, when  I see that postman walking up the street,
> heading to my home, I wonder, you know "I wonder if he's
> the one who heard that story?" I wonder if [he] knows
> I've been in prison? Did that pop in my head? Of course.

(Dkt. No. 60-1 at 50-51) (emphasis added).

Furthermore, Strong admitted that no employer for whom he has

worked or applied to work since his resignation, nor any customers

of the car dealership or the homebuilder for whom he has actually

worked, had ever told him that they knew about his criminal record.

Id. at 120. Strong further admitted that, on the contrary, there

was "no evidence" that any customer, employer, or potential

employer to whom he had applied to work, had learned about his

criminal history "as a result of any acts or omissions by the

Postal Service or its employees." Id. at 120-21. In fact, when

specifically asked whether "anybody else ever told [him] that they

knew about [his] criminal record" as a result of PM Grossa's

alleged disclosure, Strong answered: "No." Id. at 52. Taken

together, these statements and admissions make clear that, rather than having been adversely affected by the purported disclosure, Strong is distressed by the mere possibility that someone might learn about his criminal record in the future.

Second, Strong has failed to establish any economic loss caused by the purported disclosure. While Strong generally asserts that he missed certain automobile, insurance, and child support payments after his resignation from USPS (Dkt. No. 60-1 at 53-54, he has provided no evidence to substantiate these claims. Further, and most critically, Strong has not established that any alleged economic loss he may have experienced was caused by the defendant's purported disclosure. Although Strong asserts that he experienced various financial difficulties in the months following his resignation, the undisputed evidence in the case establishes that, prior to voluntarily resigning from USPS, he had secured gainful employment as a car salesman in Morgantown, which commenced approximately one week later. Moreover, Strong has offered no evidence whatsoever that any of his alleged financial difficulties were caused by his former employer's purported disclosure of his criminal record, as opposed to his new commission-based income or his decision to move from Clarksburg to Morgantown.

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

Thus, despite Strong's contention that he has alleged "small
. . . [but] significant" economic losses sufficient to survive
summary judgment (Dkt. No. 80 at 1, 3), no evidence corroborates
Strong's conclusory allegation that PM Grossa's purported
disclosure of his criminal record caused him to experience any
actual economic loss. Because the record is devoid of any evidence
of tangible consequences stemming from the alleged disclosure, the
Court concludes that Strong has failed to present sufficient
evidence of "actual damages" to survive summary judgment.[4]

Therefore, because the Privacy Act "guarantees $1,000 only to
plaintiffs who have suffered some actual damages," and because
Strong has failed to produce evidence sufficient to permit a
rational trier of fact to conclude that he suffered any actual
damages, the Court **GRANTS** the Postmaster General's motion for
summary judgment on his Privacy Act claim. Chao, 540 U.S. at 627.

**B.    Constructive Discharge**

In Count Two, Strong alleges that he was subjected to unlawful
acts of racial discrimination while working at USPS and, therefore,
his resignation constitutes a constructive discharge under Title

---

[4] In his opposition to the motion for summary judgment, Strong
conceded that the Privacy Act does not authorize general damages
"for pure mental or emotional distress" (Dkt. No. 61 at 7).

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

VII (Dkt. No. 49 at 7-8). He specifically contends that he was forced to leave USPS due to the "intimidating, abusive and hostile" environment created by the defendant's "unwelcome, enduring, and offensive" workplace harassment. Id.

To prove constructive discharge, a plaintiff must at the outset show that his employer "deliberately made [his] working conditions intolerable in an effort to induce [him] to quit." Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006) (citing Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 272 (4th Cir. 2001)). A plaintiff therefore must demonstrate (1) that his employer's actions were deliberate, and (2) that the working conditions were intolerable. Id. (citing Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 186-87 (4th Cir. 2004)); Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 244 (4th Cir. 1997)). An employer's actions are deliberate only if they "were intended by the employer as an effort to force the plaintiff to quit." Matvia, 259 F.3d at 272. Here, even if Strong could establish that the defendant deliberately intended to force him to resign, he still cannot show that his working conditions were objectively intolerable.

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

### 1. Objectively Intolerable Working Conditions

"Whether an employment environment is intolerable is determined from the objective perspective of a reasonable person." Heiko, 434 F.3d at 262 (citing Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004)). Notably, "[i]ntolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, even that the employee subjectively felt compelled to resign[;] . . . '[r]ather, intolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign'—that is, whether he would have had no choice but to resign." Blistein v. St. John's College, 74 F.3d 1459, 1468 (4th Cir. 1996) (quoting Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985)) (alternations in original).

The burden of proving objectively intolerable conditions is therefore a heavy one. The Fourth Circuit has made clear that, in the context of constructive discharge, "[d]ifficult or unpleasant working conditions" do not qualify as intolerable conditions. Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994). In fact, "[e]ven truly awful working conditions may not rise to the level of constructive discharge." Hill v. Verizon Md., Inc., No.

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

RDB-07-3123, 2009 WL 2060088, *13 (D. Md. July 13, 2009); see also Williams, 370 F.3d at 434 (holding that, even if true, plaintiff's allegations that her supervisors "yelled at her, told her she was a poor manager and gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back" did not establish the objectively intolerable working conditions necessary to prove constructive discharge).

Here, Strong specifically objects to the R&R's conclusion "that there is no material factual dispute over his working conditions, and whether they were objectively intolerable" (Dkt. No. 80 at 1-2). To support his constructive discharge claim, Strong alleges that PM Grossa failed to investigate damage to his car, prevented him from speaking, taking breaks, or having lunch with the facility's only other African-American employee, stared at him disapprovingly, told him he was working too slowly, threatened to fire him, and fired—and immediately rehired—him on one occasion.

Even if true, when viewed in the light most favorable to Strong, these allegations do not establish the objectively intolerable working conditions necessary to prove a constructive discharge. At most, Strong may have experienced problems or tensions on the job greater than those experienced by other employees. However, "[t]he fact that problems and tensions are

17

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

encountered on the job are not enough to establish constructive discharge." Bristow, 770 F.2d at 1251. Additionally, "difficult or unpleasant working conditions" do not qualify as intolerable conditions, nor are employees "guaranteed a working environment free of stress." Heiko, 434 F.3d at 262 (internal citations omitted). "In short, '[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.'" Williams, 370 F.3d at 434 (quoting Carter, 33 F.3d at 459).

### 2. Subjective Perception of Hostility

In his objections, Strong points to the R&R's purported failure to consider his subjective perception of hostility at the USPS facility (Dkt. No. 80 at 3-4). Citing Freeman v. Dal-Tile Corp., he contends that a court's "review[] ... of a Title VII claim under the summary judgment standard has both subjective and objective parts." 750 F.3d 413 (4th Cir. 2014). He argues that, under the subjective component, he has put forth sufficient evidence of perceived harassment to allow a jury "to consider if the activities involved created a hostile work environment leading to his constructive discharge" (Dkt. No. 80 at 6).

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

Strong's reliance on <u>Freeman</u> for this contention is misguided. First, and foremost, Strong impermissibly conflates his constructive discharge claim with a pure hostile work environment claim. While it is true that the "severe or pervasive" element of a hostile work environment claim "has both subjective and objective parts," <u>Freeman</u>, 750 F.3d at 421, hostile work environment and constructive discharge are separate and distinct legal claims with differing burdens of proof. <u>See</u> <u>Pa. State Police v. Suders</u>, 542 U.S. 129, 146-47 (2004) ("For a [case of hostile work environment] to be actionable . . . the offending behavior must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. A hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign.")(internal citations and quotation marks omitted).

Indeed, courts have consistently held that the burden of proof required to establish a claim for constructive discharge is more stringent than that required to establish a pure hostile work environment claim. <u>See, e.g.,</u><u>Fincher v. Depository Trust and Cleaning Corp.,</u> 604 F .3d 712, 725 (2d Cir. 2010) (noting that the

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

standard required to establish constructive discharge is "higher than" the standard for hostile work environment); Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 316 n. 4 (3d Cir. 2006) (observing that a hostile work environment "will not always support a finding of constructive discharge" and that constructive discharge requires "a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment"). In point of fact, the Fourth Circuit in Freeman concluded that while "a reasonable fact-finder could find that there was an objectively hostile work environment based on both [the plaintiff's] race and sex," it further concluded that the plaintiff had failed nonetheless to "present sufficient evidence to create a question of fact as to whether . . . her working conditions at the time she resigned were objectively intolerable. Id. at 424-25 (affirming district court's grant of summary judgment to former employer on plaintiff's constructive discharge claim).

Thus, where, as here, an alleged constructive discharge stems from an alleged hostile work environment, the plaintiff "must show working conditions so intolerable that a reasonable person would have felt compelled to resign." Fincher, 604 F.3d 725 (quoting Pa. State Police, 542 U.S. at 147). For the reasons previously discussed, and as concluded by Magistrate Judge Aloi, Strong has

not presented sufficient evidence to create a question of material fact as to whether his working conditions at the time he resigned were objectively intolerable.

Accordingly, the Court concludes that Strong has failed to establish that the Postmaster General deliberately made his working conditions intolerable for the purpose of forcing him to resign. Because Strong cannot establish a viable claim of constructive discharge, the Court **GRANTS** the Postmaster General's motion for summary judgment as to that claim.

## C. Intentional Infliction of Emotional Distress

Finally, in Count Three, Strong alleges a claim for IIED based on "the same actions of Defendant that constituted a breach of the Privacy Act," namely, PM Grossa's alleged disclosure of his personnel file and criminal record (Dkt. Nos. 49 at 8-9; 80 at 6). Specifically, Strong alleges that a former co-worker informed him that, shortly after his resignation, PM Grossa had discussed Strong's criminal history with other employees and had left his personnel file, including his background check, in the break room for employees to view. Even if, as Strong argues in his objections, the Privacy Act does not provide the exclusive remedy for a data breach by a federal agency (Dkt. No. 80 at 6-7), Strong has failed nonetheless to establish a viable claim for IIED.

21

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

The Supreme Court of Appeals of West Virginia ("Court of Appeals") first recognized a claim for IIED, also known as the tort of outrage, in Harless v. First Nat'l Bank, 289 S.E.2d 692 (W. Va. 1982). In Harless, the Court of Appeals held, in relevant part, that "one who by extreme and outrageous conduct intentionally . . . causes severe emotional distress to another is subject to liability for such emotional distress." Id. at 703. Therefore, to establish a claim for IIED/outrage, a plaintiff must establish:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency;
>
> (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct;
>
> (3) that the actions of the defendant caused the plaintiff to suffer emotional distress and;
>
> (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Loudin v. Nat'l Liab. & Fire Ins., 716 S.E.2d 696, 705 (W. Va. 2011).

A notoriously difficult fact pattern to prove, the Fourth Circuit recently commented that "[i]t is difficult to overstate the high burden of proof required to sustain a tort claim for intentional infliction of emotional distress/outrage." Pegg v.

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

Herrnberger, 845 F.3d 112, 122 (4th Cir. 2017) (discussing West Virginia IIED law). Courts demand such "strict proof of unprecedented and extreme misconduct" in these cases because, "where no physical injury accompanies the wrong, the tort of outrage is a slippery beast, which can easily get out of hand without firm judicial oversight." Tanner v. Rite Aid of W. Va., Inc., 461 S.E.2d 149, 157 (W. Va. 1995) (quoting Keyes v. Keyes, 392 S.E.2d 693, 696 (W. Va. 1990)).

In light of the need for judicial oversight, the Court of Appeals has explained that, in evaluating a defendant's conduct in an IIED/outrage claim, "the role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional . . . infliction of emotional distress." Travis v. Alcon Labs., Inc., 504 S.E.2d 419, 428 (W. Va. 1998). Critically, "whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." Id. The Court of Appeals has further indicated that it is "almost impossible to define what will make a case of outrageous conduct. Instead, [the court] will define what is not on a case-by-case basis." Hines v. Hills Dep't Stores, Inc., 454 S.E.2d 385, 390 (W. Va. 1994).

23

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

Viewed objectively and in the light most favorable to Strong, the allegations in this case, even if true, are "markedly milder than the kind of conduct courts applying West Virginia law have found necessary to support an intentional infliction of emotional distress claim." Pegg, 845 F.3d at 122. See, e.g., Bell v. Nat'l Republican Cong. Comm., 187 F. Supp. 2d 605 (S.D. W. Va. 2002) (allowing IIED claim to proceed where political organization's campaign pamphlet labeled plaintiff a rapist and child molester); Heldreth v. Marrs, 425 S.E.2d 157, 161–62 (W. Va. 1992) (allowing IIED claim to proceed where husband suffered a heart attack after witnessing his wife get struck by a car and die). But see Keyes, 392 S.E.2d at 694 (disallowing IIED claim where a family excluded son from his father's obituary, burial plans, and car ride to the funeral); Lee v. City of S. Charleston, 668 F.Supp.2d 763, 779 (S.D. W. Va. 2009) (disallowing IIED claim based on a roadside strip search that exposed arrestee's genitals to the officer).

Insomuch as Strong has put forth unsubstantiated assertions about PM Grossa's purported disclosure of his criminal record and offers no other evidence to support his claim that he was subjected to outrageous conduct, the Court concludes that PM Grossa's conduct cannot be reasonably regarded as so extreme and outrageous to constitute IIED. Accordingly, because Strong cannot establish a

**MEMORANDUM OPINION AND ORDER ADOPTING R&R [DKT. NO. 77] AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 59]**

viable claim of IIED, the Court **GRANTS** the Postmaster General's motion for summary judgment as to that claim.

#### IV. CONCLUSION

In summary, for the reasons discussed, the Court:

1. **OVERRULES** Strong's objections (Dkt. No. 80);

2. **ADOPTS** the R&R to the extent consistent with this Memorandum Opinion (Dkt. No. 77);

3. **GRANTS** the Postmaster General's motion for summary judgment (Dkt. No. 59);

4. **DENIES** the Postmaster General's motion for judgment on the pleadings (Dkt. No. 59);

5. **DENIES AS MOOT** the Postmaster General's motion to strike (Dkt. No. 63) and motions in limine (Dkt. Nos. 64, 65); and

6. **DISMISSES** this case **WITH PREJUDICE,** and **ORDERS** that it be **STRICKEN** from the Court's active docket.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to enter a separate judgment order.

DATED: July 17, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE